## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

BRIDGET A. WARNE, Individually and on )
behalf of all others similarly situated, )
)
                Plaintiff, )     Case No. 1:26-cv-00424
)
    v. )
) **JURY TRIAL DEMANDED**
UNITED WHOLESALE MORTGAGE, )
LLC, )
)
              Defendant. )

## CLASS ACTION COMPLAINT

1.      Plaintiff Bridget A. Warne ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

2.      In violation of the TCPA, United Wholesale Mortgage and/or third-parties acting on its behalf made telemarketing calls to Ms. Warne's residential telephone number for the purpose of advertising and encouraging the purchase of United Wholesale Mortgage's goods and services, without prior express invitation or permission.

3.      Ms. Warne never consented to receive the calls. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers en masse, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendant.

4.      A class action is the best means of obtaining redress for the Defendant's wide-scale

1

illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

5.      This is an action for injunctive relief, statutory damages, and actual damages based on these unlawful telephone solicitation calls (commonly referred to as "robocalls") that violated the TCPA.

## The Parties

6.      Bridget Warne is an individual residing in Peyton, Colorado.

7.      United Wholesale Mortgage ("UWM" or "Defendant") is a limited liability company organized under Michigan law with its headquarters and, upon information and belief, principal place of business in Pontiac, Michigan.  UWM is a mortgage lender and purchase lender, and bills itself as the number one mortgage and purchase lender in the U.S. as well as the number one wholesale lender for the past ten years.  UWM is authorized to do business in Colorado, has a Colorado Mortgage Company Registration License number, and does business throughout Colorado.

## Jurisdiction And Venue

8.      The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368 (2012).

9.      The events described herein relate to unlawful telemarketing calls to Plaintiff's residential telephone number.

10.      This Court has personal jurisdiction over Defendant because the alleged tortious acts and conduct that are the subject of this action occurred in Colorado, Defendant transacts business in Colorado, and Defendant deliberately targeted fand continues to target business activity

2

246243

in Colorado and purposefully avails itself of the laws, protections, and advantages of doing business in Colorado with Colorado consumers like Plaintiff.

11.    Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant does business in this District and thus resides in this District within the meaning of 28 U.S.C. § 1391(c)(2), and pursuant to 28 U.S.C. § 1391(b)(2) because this is the district in which a substantial part of the events and omissions giving rise to the claims occurred.

## The Telephone Consumer Protection Act

12.    "Americans passionately disagree about many things.  But they are largely united in their disdain for robocalls."  *Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 610, 613 (2020).

13.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

## The TCPA Prohibits Calling Numbers after a Stop Request and Prohibits Calling Numbers on the National Do Not Call Registry

14.    Section 227(c) of the TCPA requires the Federal Communications Commission ("FCC") to implement regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."  47 U.S.C. § 227(c)(1).

15.    Pursuant to that instruction, the FCC has implemented the following rule:  "Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such

3

246243

request is made. This period may not exceed thirty days from the date of such request."  47 C.F.R. § 64.1200(d)(3).

16.    The FCC also created the National Do-Not-Call Registry, which allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2).

17.    A telephone number's registration on the Do-Not-Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."  *Id.*

18.    The TCPA and implementing regulations prohibit initiating telephone solicitations to any residential telephone subscriber's telephone number that is registered on the National Do-Not-Call Registry.  *See* 47 C.F.R. § 64.1200(c)(2); 47 U.S.C. § 227(c)(5).

19.    The TCPA and implementing regulations provide a private cause of action to persons who receive more than one call "by or on behalf of the same entity" within any 12-month period in violation of these regulations.  *See* 47 U.S.C. § 227(c)(5).

**Sellers like United Wholesale Mortgage Are Liable under the TCPA**

20.    The FCC has held that a company on whose behalf a telephone call is made bears the responsibility for any TCPA violations.  *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 565 (¶ 10) (Jan. 4, 2008) (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

21.    On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts-out its telephone marketing "may be held vicariously liable under

4

246243

federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re DISH Network, LLC*, 28 FCC Rcd 6574, 6574 (¶ 1) (May 9, 2013).

22.     The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  *In re DISH Network, LLC*, 28 FCC Rcd at 6586 (¶ 34).

23.     The May 2013 FCC Ruling further clarifies some of the circumstances under which a telemarketer has apparent authority or a seller ratifies a telemarketer's unauthorized conduct:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*In re DISH Network, LLC*, 28 FCC Rcd at 6592 (¶ 46).

24.     The FCC has rejected a narrow view of TCPA liability, including the notion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call.  *In re DISH Network, LLC*, 28 FCC Rcd at 6587 n.107.

25.     The FCC has confirmed that sellers such as UWM may not avoid liability by

5

246243

outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

## THE UNLAWFUL CONDUCT

26.     Plaintiff registered her residential telephone number (xxx) xxx-0834 on the National Do Not Call Registry more than 31 days prior to the calls at issue.

27.     Beginning in or around 2004, Plaintiff's telephone number (xxx) xxx-0834 has at all times been used solely used for residential purposes and not any business purpose.

28.     On September 24, 2025, Plaintiff received a call on her residential telephone number (xxx) xxx-0834.

29.     At the outset of the call, there was a brief pause of dead air then a beep, at which point a live representative came on the line and asked to speak to "Andrew." Plaintiff asked who was calling, and the representative stated the call was on behalf of United Wholesale Mortgage and wanted to try to help Andrew get a better rate on his mortgage. Plaintiff stated there is no Andrew at her telephone number and instructed the representative to stop calling.

30.     Defendant did not honor Plaintiff's do-not-call request. Instead, Plaintiff continued to receive telemarketing calls promoting UWM's mortgage-refinancing products and services.

6

246243

31.    Less than eight hours later, on September 24, 2025, Plaintiff received a call on her residential telephone number (xxx) xxx-0834 from or on behalf of Defendant.

32.    During the call, a representative asked to speak to "Andrew," Plaintiff asked who was calling, the representative stated the call was from United Wholesale Mortgage to try to get Andrew a better rate on his mortgage.  Plaintiff stated there is no Andrew at her telephone number and told the representative don't call back.

33.    Defendant again did not honor Plaintiff's do-not-call request.  Instead, Plaintiff continued to receive telemarketing calls promoting UWM's mortgage-refinancing products and services.

34.    Between September 24, 2025 and December 10, 2025, Plaintiff received over fifty (50) calls on her residential telephone number (xxx) xxx-0834 from and on behalf of Defendant— and often received numerous such calls in a single day.

35.    During each of those calls, a representative asked to speak to "Andrew" or, sometimes, "Mr. or Mrs. Maler," and stated he or she was calling "from United Wholesale Mortgage" or "on behalf of United Wholesale Mortgage," to try to help get Andrew or Mr. or Mrs. Maler a better mortgage rate or refinance his/their mortgage.  During some calls, Plaintiff again told the representative there is no Andrew or Mr. or Mrs. Maler at her telephone number, and/or that the representative is calling the wrong number.  During each of calls, Plaintiff either once again instructed the representative to stop calling or not call back, or sometimes just hung up as soon as she knew it was another call from or on behalf of United Wholesale Mortgage.

36.    Plaintiff grew so tired of and frustrated by the illegal, harassing calls that on November 7, 2025, she sent a letter to United Wholesale Mortgage complaining about the calls,

7

explaining she repeatedly told the United Wholesale Mortgage's representatives that the people

they are asking for are not at her residential telephone number (xxx) xxx-0834, and advising United

Wholesale Mortgage that the calls violated the TCPA.

37.     Defendant did not respond to Plaintiff's letter, but instead ignored it.

38.     And the calls did not stop.  Plaintiff received at least 14 additional calls from or on

behalf of United Wholesale Mortgage after sending her November 7, 2025 letter.

39.     Upon information and belief, Plaintiff received many more calls from or on behalf

of United Wholesale Mortgage in addition to the calls specifically alleged above.

40.     At no time did Plaintiff sign a written agreement with UWM, any UWM broker, or

anyone else containing Plaintiff's residential telephone number (xxx) xxx-0834 and stating

Plaintiff agrees to be contacted on that number by UWM or anyone acting on behalf of UWM.

## CLASS ALLEGATIONS

41.     As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings

this action on behalf of the following classes of all other persons or entities similarly situated

throughout the United States.

42.     The classes of persons Plaintiff proposes to represent are tentatively defined,

subject to amendment, as follows:

**Do Not Call Registry Class**
Each person in the United States: (1) to whose non-commercial telephone number Defendant or anyone acting on Defendant's behalf initiated two or more telephone solicitations during a 12-month period; (2) promoting Defendant's service for sale (3) where the person's telephone number was registered on the National Do Not Call Registry more than thirty-one days before the telephone solicitations; (4) at any time from four years before the date this Complaint was filed through trial.

**Stop Request Class**

8

246243

Each person in the United States to whose (1) non-commercial telephone number (2) Defendant or anyone acting on Defendant's behalf initiated two or more telephone solicitations during a 12-month period (3) promoting Defendant's services for sale (4) at least 7 days after receipt of a do not call request (5) at any time from four years before the date this Complaint was filed through trial.

43.    Upon information and belief, the members of the classes received at least two telephone solicitations without having given prior express invitation or permission.

44.    The classes defined above are identifiable through phone records, phone number databases, and business records.

45.    The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals per day. Individual joinder of these persons is impracticable.

46.    Plaintiff is a member of the proposed classes.

47.    There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

    a)    Whether Defendant violated the TCPA;

    b)    Whether the calls constitute telephone solicitations;

    c)    Whether the calls were for purposes of encouraging the purchase or rental of, or investment in, UWM's goods or services;

    d)    Whether Defendant and/or any third-parties who placed the calls on Defendant's behalf instituted procedures for maintaining an internal do-not-call list of persons who requested not to receive telemarketing calls by or on behalf of that person or entity;

9

246243

e)   Whether the conduct of Defendant and/or any third-parties who placed the calls was knowing and/or willful;

f)   Whether any third-parties who placed the calls are agents of UWM;

g)   Whether UWM ratified the conduct of any third-parties who placed the calls;

h)   Whether Defendant is liable for the calls and/or other acts and omissions of any third-parties who placed the calls; and

i)   Whether the Plaintiff and the class members are entitled to statutory damages and/or injunctive relief because of Defendant's actions.

48.   Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the classes, arise out of the same common course of conduct by Defendant and its agents, and are based on the same legal and remedial theories.

49.   Plaintiff is an adequate representative of the classes because her interests do not conflict with the interests of the classes, she will fairly and adequately protect the interests of the classes, and she is represented by counsel skilled and experienced in class actions.

50.   Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which are readily identifiable from records maintained by Defendant, its agents, the National Do Not Call Registry, and others.

51.   Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources,

10

246243

promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

52.    The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

53.    Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the classes, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the classes as a whole.  Prosecution of separate actions by individual members of the putative lasses, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the classes that would establish incompatible standards of conduct.

### <u>COUNT I</u>
### Solicitations to Numbers on the National Do Not Call Registry

54.    Plaintiff and the class members re-allege and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

55.    It is a violation of the TCPA for any person or entity to initiate any telephone solicitation to a residential or cellular number registered on the National Do Not Call Registry. *See* 47 C.F.R. § 64.1200(c)(2); *id.* at § 64.1200(e).

56.    Defendant and/or others acting on Defendant's behalf made two or more telephone solicitation calls to Plaintiff's and the putative class members' residential telephone numbers that were registered on the National Do Not Call Registry for more than 31 days prior to the calls.

57.    Plaintiff and members of the putative Class have received more than one telephone call made by or on behalf of Defendant within a twelve (12) month period in violation of the

11

regulations set forth in 47 C.F.R. § 64.1200.

58.    As a result of Defendant's conduct and pursuant to 47 U.S.C. § 227(c)(5) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to at least $500.00 in damages for each violation.  Plaintiff and the class are also entitled to an injunction against future calls.

**COUNT TWO**
**Solicitations After a Stop Request**

59.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

60.    Defendant violated 47 U.S.C. § 227(c) and the FCC's regulation at 47 C.F.R. § 64.1200(d)(3) by failing to institute procedures necessary to honor do-not-call requests and by placing telemarketing calls to Plaintiff and the class's residential phone numbers after receipt of a do-not-call request.

61.    As a result of Defendant's violations, Plaintiff and the Class are entitled to an award of $500 in statutory damages for each and every violation of the statute, or up to $1,500 in statutory damages for each willfully or knowingly made violation, pursuant to 47 U.S.C. § 227(b)(3).

**WHEREFORE**, Plaintiff Bridget Warne, on behalf of herself and the other members of the classes, prays for the following relief:

a)    A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b)    An injunction prohibiting Defendant from initiating, or accepting leads generated by others initiating, telephone solicitations to persons who have

12

246243

registered their telephone numbers with the National Do Not Call Registry;

c) An award of actual damages;

d) An award of statutory damages for Plaintiff and each Class member in the amount of $500.00 for each and every call that violated the TCPA;

e) An award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiff and each Class member for each and every call that willfully and/or knowingly violated the TCPA;

f) An order certifying this action to be a proper class action pursuant to the Federal Rules of Civil Procedure 23, establishing the appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff, individually and on behalf of all others similarly situated, demands a trial by jury on all issues so triable.

Dated: February 4, 2026

Respectfully Submitted,

BRIDGET A. WARNE, individually and on behalf of all others similarly situated,

By: /s/ Timothy J. Sostrin

Timothy J. Sostrin
Keith J. Keogh
KEOGH LAW, LTD.

13

246243

55 W. Monroe Street, Suite 3390
Chicago, Illinois 60603
(312) 726-1092
(312) 726-1093 (fax)
keith@keoghlaw.com
tsostrin@keoghlaw.com

***Attorneys for Plaintiff and the Putative Class***

## ATTORNEY CERTIFICATION

I, Timothy J. Sostrin, certify that I am a member in good standing of the bar of this Court.


By:  /s/ Timothy J. Sostrin
Timothy J. Sostrin
*Attorney for Plaintiff*

14

246243