UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Case No. 1:26-cv-00424-SKC-MDB

BRIDGET A. WARNE, individually and on
behalf of all similarly situated,

**ORAL ARGUMENT
REQUESTED**

        Plaintiff,

v.

UNITED WHOLESALE MORTGAGE, LLC,

        Defendant.

---

**DEFENDANT UNITED WHOLESALE MORTGAGE, LLC'S
MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS**

Defendant United Wholesale Mortgage, LLC ("UWM"), by and through its undersigned counsel, respectfully moves this Court to dismiss Plaintiff Bridget Warne's putative class action Complaint for want of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), or, alternatively, to strike class allegations pursuant to Fed. R. Civ. P. 12(f).[1] Plaintiff seeks to hale UWM, a Michigan-based mortgage lender, into this Colorado court, based on calls that UWM did not make or authorize, and which were placed by third parties—from Michigan phone numbers, intended for Michigan residents. Plaintiff identifies no facts supporting the finding of an agency relationship between UWM and the callers, and no other connection between UWM and this forum.

UWM, which operates exclusively as a wholesale mortgage lender, works with some 57,000 independent mortgage loan officers nationwide. These loan officers are licensed professionals who operate within independent mortgage broker businesses

---

[1] Contemporaneous with this Motion, UWM also filed a Motion to Transfer, seeking—in the alternative to dismissal—to transfer this case to the U.S. District Court for the Eastern District of Michigan (the "Michigan Court"). Notwithstanding the Motion to Transfer, dismissal for want of personal jurisdiction or for failure to state claim is the proper remedy in this case, based on the arguments articulated in this Motion to Dismiss. However, to the extent the Court finds personal jurisdiction lacking and further finds that interest of justice requires transfer rather than outright dismissal, it can transfer the case to the Michigan Court pursuant to 28 U.S.C. § 1631. Likewise, to the extent the Court finds that venue in this Court is improper (for reasons overlapping with the personal jurisdiction analysis), and further finds that transfer rather than outright dismissal is in the interest of justice, the Court should transfer this case to the Michigan Court pursuant to 28 U.S.C. § 1406(a). Finally, even if the Court were to deny UWM's Motion to Dismiss, the Court should transfer the case to the Michigan Court for "the convenience of parties and witnesses" and in "the interest of justice," pursuant to 28 U.S.C. § 1404(a).

and work with consumers to identify the best mortgage loan product for them. The mortgage broker businesses are not limited to offering only UWM mortgage loan products; they can offer products of numerous other lenders. UWM requires every mortgage broker partner to sign a Wholesale Broker Agreement ("UWM Broker Agreement") expressly acknowledging that the broker is an independent contractor and not UWM's agent or employee. The UWM Broker Agreement prohibits brokers from using UWM's name in any form of marketing unless UWM gives prior written consent. UWM did not authorize any broker to contact Plaintiff or anyone else connected with her number.

This Court has no basis to assert personal jurisdiction over UWM. General jurisdiction does not exist because UWM is not "at home" in Colorado. Specific jurisdiction does not exist because the claims do not arise from any purposeful conduct by UWM directed at this state. UWM did not make or direct the alleged calls, and Plaintiff cannot impute the actions of independent mortgage brokers to UWM under any viable theory of agency. The Complaint offers no plausible allegations concerning UWM granting actual authority, doing acts sufficient to give rise to apparent authority or ratifying third parties' conduct here. UWM does not, and cannot, control independent brokers' interactions with the general public. Without minimum related contacts with Colorado, requiring UWM to defend this case in Colorado would offend traditional notions of fair play and substantial justice.

Even if jurisdiction in this Court were proper (it is not), the Complaint fails to state a claim for relief. Plaintiff alleges no facts suggesting that UWM itself initiated the calls at issue, requiring rejection of any direct liability claims. The TCPA offers a limited theory of vicarious liability, but Plaintiff's bare assertion that the subject calls were made "on behalf of" UWM, unsupported by any specific facts suggesting UWM's actual involvement, cannot carry the day. Besides that, the Complaint offers no facts showing actual or apparent authority or ratification by UWM. The UWM Broker Agreement expressly forbids brokers from holding themselves out as UWM's agents and from utilizing UWM's name in unapproved advertising. UWM is not alleged to make representations giving brokers authority to contact Plaintiff's number on UWM's behalf. Nor does the Complaint allege that UWM derived any benefit from the calls so as to be liable under the ratification theory.

Independent of UWM's jurisdictional and Rule 12(b)(6) arguments, the Court should also strike class allegations under Rule 12(f). On the face of the Complaint, the proposed "Do Not Call Registry" and "Stop Request" classes are impermissibly fail-safe—i.e., defined by reference to whether the challenged calls were made "by or on behalf of" UWM, a merits-based determination that excludes all claims that do not succeed on the merits from the class. Further, because individualized inquiries would be necessary to determine who made the calls and under what agency theory, they defeat commonality, predominance, and ascertainability. No amount of discovery will remedy this issue, warranting the striking of class allegations at the pleadings stage.

On March 9, 2026 and March 19, 2026, UWM sought concurrence in the relief requested in a live call, but such concurrence was denied.

WHEREFORE, UWM requests this Honorable Court issue an Order:

A.    Dismissing the Complaint in its entirety with prejudice;

B.    Striking class allegations in the Complaint; and

C.    Awarding attorneys' fees, costs, and all other relief to which UWM is entitled.

Dated: March 31, 2026                    Respectfully submitted,

                                        FOLEY & LARDNER LLP

                                        By:  */s/Kelsey C. Boehm*
                                        Kelsey C. Boehm
                                        1144 15th Street, Suite 2200
                                        Denver, CO 80202
                                        Telephone: (720) 437-2000
                                        Email: kboehm@foley.com


                                        Irina Kashcheyeva (admission request
                                        forthcoming)
                                        Amir El-Aswad  (admission request
                                        forthcoming)
                                        FOLEY & LARDNER LLP
                                        500 Woodward Avenue, Suite 2700
                                        Detroit, Michigan 48226
                                        Telephone: (313) 234-7100
                                        Email: ikashcheyeva@foley.com
                                        Email: ael-aswad@foley.com

                                        *Counsel for Defendant United Wholesale
                                        Mortgage, LLC*

4

UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Case No. 1:26-cv-00424-SKC-MDB

BRIDGET A. WARNE, individually and on
behalf of all similarly situated,

       Plaintiff,

v.

UNITED WHOLESALE MORTGAGE, LLC,

       Defendant.

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
UNITED WHOLESALE MORTGAGE, LLC'S
<u>MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS</u>**

**TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED ................................................................... vii

I.     INTRODUCTION .......................................................................................... 1

II.    FACTUAL BACKGROUND .......................................................................... 2

III.   STANDARD OF REVIEW. ........................................................................... 5

IV.    THE COURT LACKS PERSONAL JURISDICTION OVER UWM. ................ 6

       A.    The Court Lacks General Personal Jurisdiction over UWM. ................. 6

       B.    The Court Lacks Specific Personal Jurisdiction over UWM. ................. 7

             1.  UWM Lacks Sufficient Minimum Contacts with Colorado. ................... 8

             2.  Exercising Personal Jurisdiction Would Offend Notions of Fair
                 Play and Substantial Justice. .............................................. 12

V.     PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM. .......................... 14

       A.    The Complaint Fails to State Direct Liability Claim Against
             UWM. .................................................................................. 15

       B.    The Complaint Fails to Allege Facts to Support Vicarious
             Liability. .............................................................................. 16

VI.    THE COURT SHOULD STRIKE CLASS ALLEGATIONS. .......................... 18

VII.   CONCLUSION .......................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
  722 F.3d 1229 (10th Cir. 2013) ................................................................... 9

*Abolaji v. Parker 1833 LLC*,
  2025 WL 2379644 (D. Colo. Jan. 8, 2025)................................................. 11

*Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*,
  956 F. Supp. 427 (S.D.N.Y. 1996) ............................................................ 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................... 6

*Bank v. Spark Energy, LLC*,
  860 F. App'x 205 (2d Cir. 2021)................................................................ 16

*BNSF Ry. Co. v. Tyrrell*,
  581 U.S. 402 (2017) ..................................................................................... 7

*Bryant v. Byron Udell & Assocs. Inc.*,
  2023 WL 5180351 (E.D. Va. Aug. 11, 2023) ............................................ 17

*Cadenasso v. Metro. Life Ins. Co.*,
  2014 WL 1510853 (N.D. Cal. Apr. 15, 2014) ........................................... 14

*Callier v. Wide Merch. Inv., Inc.*,
  671 F. Supp. 3d 736 (W.D. Tex. 2023) ......................................... 8, 10, 11

*Chinitz v. NRT W., Inc.*,
  2019 WL 4142044 (N.D. Cal. Aug. 30, 2019)........................................... 19

*Cline v. Sunoco, Inc. (R&M)*,
  159 F.4th 1171 (10th Cir. 2025)................................................................ 20

*Columbia Cas. Co. v. Valor Health Network, LLC*,
  2024 WL 3597180 (D. Colo. July 31, 2024)................................................ 7

*Computer Assocs. Int'l, Inc. v. Am. Fundware, Inc.*,
  831 F. Supp. 1516 (D. Colo. 1993).............................................................. 2

*Connor v. Servicequick Inc.*,
   2025 WL 2855393 (D. Colo. Oct. 8, 2025) ................................................................. 15

*Coreslab Structures (TULSA), Inc. v. Nat'l Lab. Rels. Bd.*,
   100 F.4th 1123 (10th Cir. 2024) ................................................................................. 9

*Costa v. Dvinci Energy, Inc.*,
   342 F.R.D. 38 (D. Mass. 2022) .................................................................................... 6

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ..................................................................................................... 7

*Daniel v. Cook Cnty.*,
   833 F.3d 728 (7th Cir. 2016) ...................................................................................... 4

*DeClements v. RE/MAX LLC*,
   2020 WL 9259326 (D. Colo. Oct. 13, 2020) ...................................................... passim

*Dental Dynamics, LLC v. Jolly Dental Grp., LLC*,
   946 F.3d 1223 (10th Cir. 2020) .............................................................................. 2, 6

*Doe v. G6 Hosp. Prop. LLC*,
   2025 WL 3537626 (W.D. Wash. Dec. 10, 2025) ..................................................... 9, 14

*Donaca v. Dish Network, LLC.*,
   303 F.R.D. 390 (D. Colo. 2014) .............................................................................. 16, 20

*Escano v. Concord Auto Protect, Inc.*,
   2023 WL 4247703 (10th Cir. June 29, 2023) ........................................................... 15

*Escue v. United Wholesale Mortg.*,
   2025 WL 2807314 (E.D. Mich. Sept. 30, 2025) ......................................................... 4

*Faulhaber v. Petzl Am., Inc.*,
   656 F. Supp. 3d 1257 (D. Colo. 2023) ................................................................... 6, 18

*Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*,
   148 F.4th 1202 (10th Cir. 2025) ................................................................................. 6

*Gonzales v. Cordoba Legal Grp., LLC*,
   2026 WL 772359 (W.D. Tex. Feb. 5, 2026), *R&R adopted,* 2026 WL 790575 (W.D.
   Tex. Feb. 21, 2026) ................................................................................................... 12

*Gresham v. Town of Depew, Oklahoma,*
2025 WL 752337 (10th Cir. Mar. 10, 2025) ............................................................ 10

*Hirsch v. USHealth Advisors, LLC,*
337 F.R.D. 118 (N.D. Tex. 2020) ............................................................................ 19

*In re Crocs, Inc. Sec. Litig.,*
774 F. Supp. 2d 1122 (D. Colo. 2011) ...................................................................... 3

*In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.,*
223 F. Supp. 3d 514 (N.D.W. Va. 2016) ................................................................ 10

*Jackson v. Caribbean Cruise Line, Inc.,*
88 F. Supp. 3d 129 (E.D.N.Y. 2015) ...................................................................... 16

*Llacua v. W. Range Ass'n,*
930 F.3d 1161 (10th Cir. 2019) ................................................................................ 2

*Lumen Techs. Serv. Grp., LLC v. CEC Grp., LLC,*
691 F. Supp. 3d 1282 (D. Colo. 2023) ...................................................................... 7

*Magill v. Ford Motor Co.,*
379 P.3d 1033 (Colo. 2016) ...................................................................................... 7

*McCafferty v. Preiss Enters., Inc.,*
534 F. App'x 726 (10th Cir. 2013) .................................................................... 11, 18

*Melito v. Am. Eagle Outfitters, Inc.,*
2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015) ........................................................ 17

*Messner v. Northshore Univ. HealthSystem,*
669 F.3d 802 (7th Cir. 2012) ................................................................................. 19

*Moore v. Charter Commc'ns, Inc.,*
523 F. Supp. 3d 1046 (N.D. Ill. 2020) ..................................................... 8, 10, 11, 12

*Old Republic Ins. Co. v. Cont'l Motors, Inc.,*
877 F.3d 895 (10th Cir. 2017) ...................................................................... 7, 8, 13

*Pilgrim's Pride Corp. v. Allegiant Elec., Inc.,*
717 F. Supp. 3d 1036 (D. Colo. 2024) ...................................................................... 6

*Pro Axess, Inc. v. Orlux Distribution, Inc.,*
428 F.3d 1270 (10th Cir. 2005) ............................................................................. 13

iv

*Pytlik v. Pro. Res.*,
   887 F.2d 1371 (10th Cir. 1989) ................................................................................. 5

*Reo v. Caribbean Cruise Line, Inc.*,
   2016 WL 1109042 (N.D. Ohio Mar. 18, 2016) ........................................................ 17

*Roehrman v. McAfee, LLC*,
   758 F. Supp. 3d 889 (S.D. Ind. 2024) ..................................................................... 12

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
   863 F.3d 460 (6th Cir. 2017) ................................................................................... 20

Selou v. Integrity Sol. Servs. Inc.*,
   *No. 15-10927, 2016 WL 612756 (E.D. Mich. Feb. 16, 2016)*.................................... 16

*Shell v. Am. Fam. Rts. Ass'n*,
   899 F. Supp. 2d 1035 (D. Colo. 2012).................................................................... 8, 9

*Smith v. Direct Bldg. Supplies, LLC*,
   2021 WL 4623275 (E.D. Pa. Oct. 7, 2021) ............................................................. 15

*Smith v. United States*,
   561 F.3d 1090 (10th Cir. 2009) ............................................................................. 2, 4

*Thomas v. Taco Bell Corp.*,
   879 F. Supp. 2d 1079 (C.D. Cal. 2012)............................................................. 10, 18

*Toney v. Quality Res., Inc.*,
   75 F. Supp. 3d 727 (N.D. Ill. 2014) .................................................................... 4, 12

*United States v. Ahidley*,
   486 F.3d 1184 (10th Cir. 2007) ................................................................................ 4

*Usanovic v. Americana, L.L.C.*,
   775 F. Supp. 3d 1133 (D. Nev. 2025) ..................................................................... 16

*VDARE Found. v. City of Colorado Springs*,
   11 F.4th 1151 (10th Cir. 2021).................................................................................. 6

*Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*,
   725 F.3d 1213 (10th Cir. 2013) ............................................................................... 20

*Warciak v. Subway Rests., Inc.*,
   949 F.3d 354 (7th Cir. 2020) .............................................................................. 11, 18

*Young v. Nationwide Mut. Ins. Co.,*
  693 F.3d 532 (6th Cir. 2012) ...................................................................................... 19

**Statutes**

28 U.S.C. § 1404(a) ........................................................................................................ 1

28 U.S.C. § 1406(a) ........................................................................................................ 1

28 U.S.C. § 1631............................................................................................................. 1

47 U.S.C. § 227...........................................................................................................iii

47 U.S.C. § 227(c)(5) ..................................................................................................... 15

**Rules**

Fed. R. Civ. P. 12(b)(2)................................................................................................... 1

Fed. R. Civ. P. 12(b)(6)................................................................................................... 1

Fed. R. Civ. P. 12(f)............................................................................................... 1, 3, 1

Fed. R. Evid. 201(b), (c) ................................................................................................ 3

Fed. R. Evid. 408........................................................................................................ 2, 3

**Regulations**

47 C.F.R. § 64.1200(c).................................................................................................... 5

47 C.F.R. § 64.1200(d) ................................................................................................... 5

**Other Authorities**

Restatement (Third) Of Agency § 2.03......................................................................... 10

# STATEMENT OF ISSUES PRESENTED

1.    Whether the Court lacks general personal jurisdiction over Defendant United Wholesale Mortgage, LLC ("UWM") when UWM: (a) is headquartered in and organized under the laws of the state of Michigan; and (b) maintains no offices, employees, property, or bank accounts in Colorado; and (c) has only arms-length business relationships with independent mortgage brokers, not continuous or systematic contacts rendering it "at home" in Colorado.

    Defendant's Answer:    Yes.

2.    Whether the Court lacks specific personal jurisdiction over UWM where: (a) UWM does not market directly to consumers in Colorado and placed no calls to Plaintiff; (b) the alleged calls originated from Michigan numbers and were intended for individuals in Michigan; (c) the Complaint fails to allege any facts showing that callers acted as UWM's agents or with UWM's authorization, apparent authority, or ratification; and (d) the UWM contract with brokers disclaims the existence of agency, further precluding the imputation of brokers' conduct to UWM.

    Defendant's Answer:    Yes.

3.    Whether the Complaint fails to state a plausible claim of direct liability under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") where no plausible, non-conclusory facts indicate that UWM "initiated" any of the telephone calls at issue, as required by statute.

    Defendant's Answer:    Yes.

4.    Whether the Complaint fails to state a plausible claim of vicarious liability under the TCPA where: (a) UWM operates exclusively as a wholesale mortgage lender marketing only to independent mortgage brokers, not consumers; (b) those brokers are, by contract, expressly designated as independent contractors, and not UWM's agents or employees; and (c) the Complaint offers no facts suggesting that UWM authorized, directed, or ratified the alleged calls.

    Defendant's Answer:    Yes.

5.    Whether the class allegations in Plaintiff's Complaint should be stricken at the pleadings stage because, on the face of the Complaint, neither the proposed Do Not Call Registry Class nor the Stop Request Class can satisfy the requirements of Rule 23, as both classes are impermissibly fail-safe in nature, and fail to meet the predominance, superiority, and ascertainability prerequisites for class certification.

Defendant's Answer:                    Yes.

## I.      **<u>INTRODUCTION</u>**

Plaintiff attempts to stretch vicarious liability under the TCPA, 47 U.S.C. § 227, far beyond its limits. Instead of plausibly alleging that Defendant United Wholesale Mortgage, LLC ("UWM") controlled and directed its agents to make calls on its behalf, Plaintiff seeks to hold UWM liable—and subject to jurisdiction—for calls made by unidentified independent mortgage brokers not exclusive to UWM, with no showing that UWM controlled when, to whom, or how such brokers called. Taken to the extreme, Plaintiff's theory would expose UWM to liability for unauthorized calls by its 57,000 loan officer clients whose communications UWM does not and cannot control—a result that is both factually unsupported and legally untenable for several reasons:

1.    **No Personal Jurisdiction.** UWM is not subject to general personal jurisdiction in Colorado because it is organized and headquartered in Michigan, and is not "at home" in Colorado. Specific personal jurisdiction in Colorado is improper because the calls came from independent third parties, not UWM, and cannot be imputed to UWM under any agency principles. Further, UWM's contract with its broker clients disclaims the existence of agency and bars the use of UWM's name without written consent—which was not given here.

2.    **Failure to State a Claim.** The Complaint separately fails under Rule 12(b)(6). It alleges no facts showing UWM directly initiated any call or that the callers acted as UWM's agents. No UWM employees, phone numbers, or directions are identified—just the conclusory claim that calls were made "from or on behalf of" UWM. Lacking any plausible allegation of actual or apparent authority, or ratification, the Complaint impermissibly rests on conjecture. In addition, UWM's contract with the brokers, which can be considered by the Court on a 12(b)(6), also precludes the finding of agency.

3.    **Impermissible Class Definitions.** The proposed class definitions should be stricken under Rule 12(f). Each is a fail-safe class, defined by whether UWM is ultimately found directly or vicariously liable, and hinging on individual determinations as to who made the calls and whether each caller acted "on behalf of" UWM—defeating commonality, predominance, and ascertainability.

## II.    FACTUAL BACKGROUND[2]

***The Calls.*** The Complaint alleges that between September 24 and December 10, 2025, Plaintiff, a resident of Colorado, received multiple calls to her phone number registered on the National Do Not Call Registry. (ECF No 1., Compl. ¶¶ 28-35.) One or more "live representatives" placed the calls, intending to speak with "Andrew" or "Mr. or Mrs. Maler" to help "Andrew" get a better mortgage rate. (*Id.* ¶¶ 29, 35.)

The Complaint alleges that, on November 7, 2025, Plaintiff sent UWM a letter complaining about the calls (the "November Letter"). (*Id.* ¶ 36.) In this Letter,[3] Plaintiff advised that the callers were trying to reach Andrew and/or Mr. or Mrs. Maler, who are not "at this number." (Compl. ¶ 36; *see also* November Letter, Ex. A to Declaration of Sarah DiCiantis ("Decl.").)[4] Plaintiff also noted in the Letter that she had told the callers "they were calling a number in COLORADO not Michigan"—implying that the calls were intended for Michigan residents. (November Letter, Ex. A to Decl.) The Letter made a monetary demand to UWM to resolve Plaintiff's claims.[5]

---

[2] Plaintiff's non-conclusory allegations are accepted as true for purposes of Rule 12(b)(6) analysis only. *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1177 (10th Cir. 2019).

[3] The Court may consider "documents incorporated into the complaint by reference" on a motion to dismiss under Rule 12(b)(6). *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The Letter qualifies as such a document.

[4] Under Rule 12(b)(2), courts may consider affidavits and other written materials. *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020). UWM does not rely on the Declaration for its Rule 12(b)(6) Motion.

[5] Although the Letter serves as a settlement negotiation, Rule 408 does not "require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations." *Computer Assocs. Int'l, Inc. v. Am. Fundware, Inc.*, 831 F. Supp. 1516, 1531 (D. Colo. 1993) (quoting Fed. R. Evid. 408). The Letter is redacted to exclude the substance of Plaintiff's settlement demand.

The Letter did not identify the names of the callers, but included a listing of "Phone Calls *from MI*." (*Id.*, emphasis added.) All numbers bear Michigan area codes, and each is a unique number not duplicative of any other. These numbers do not belong to UWM, and UWM does not have borrowers with the last name "Maler." (Decl. ¶ 4.) UWM did not place the calls to Plaintiff's phone number, nor did it authorize any other party to make these calls. (*Id.* ¶¶ 11, 16.) The Letter did not contain sufficient details about the calls for UWM to identify the broker(s) who made these calls. (*Id.* ¶ 7.) The Complaint alleges that Plaintiff received 14 additional calls "from or on behalf of" UWM after "sending" the Letter, though the Complaint does not identify when or by whom these calls were made. (Compl. ¶38.)

***UWM's Business Model.*** UWM is the nation's largest wholesale mortgage lender, with "exclusive focus on the wholesale channel." (Ex. 1, UWM 2025 Annual 10-K Report ("10-K"), p. 6.)[6] Unlike retail lenders, who deal directly with consumers through in-house loan officers, UWM works entirely through independent mortgage broker businesses, who "have the initial communication with a potential borrower." (*Id.* at pp. 7, 17.) These brokers act as neutral advisors for consumers, comparing rates and products from multiple lenders to find the best deal for the consumer. (*Id.* at pp 5, 7.) Unlike retail bank loan officers, independent mortgage brokers represent

---

[6] The Court may take judicial notice of publicly available information, like annual reports, for purposes of this Motion to Dismiss. *In re Crocs, Inc. Sec. Litig.*, 774 F. Supp. 2d 1122, 1143 n.3 (D. Colo. 2011); Fed. R. Evid. 201(b), (c).

the borrower, not the lender.[7]

UWM markets its products exclusively to independent mortgage broker partners, who in turn may offer UWM loan products directly to consumers:

> Our principal strategy [. . .]is our strategic decision to operate solely as a Wholesale Mortgage Lender—thereby avoiding conflict with our partners, the Independent Mortgage Brokers and their direct relationship with borrowers. Unlike "Retail Mortgage Lenders" that offer mortgage loans directly to individual borrowers and underwrite the mortgage loans, we do not work directly with the borrower [. . .] We believe that by not competing for the borrower connection and relationship, we are able to generate significantly higher loyalty and satisfaction from our clients, the Independent Mortgage Brokers....

(Ex. 1, 10-K, p. 5.)

UWM's clients include over 13,000 independent mortgage broker businesses and 57,000 associated independent mortgage loan officers nationwide. (*Id.* at p. 6.) UWM enters into a Wholesale Broker Agreement with its mortgage broker business clients, which states that broker clients are independent contractors and not UWM's agents. (Decl. ¶ 15; Ex. B to Decl., UWM Broker Agreement ¶ 7.04.)[8] The UWM Broker Agreement prohibits brokers from holding themselves out as agents,

---

[7] *Escue v. United Wholesale Mortg.*, 2025 WL 2807314, at \*2 (E.D. Mich. Sept. 30, 2025). This Court may also "take [judicial] notice of proceedings in other courts." *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007); *see also Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016).

[8] The Broker Agreement may also be considered under Rule 12(b)(6) because it is central to Plaintiff's claims and was incorporated by reference in the Complaint, which asserts that UWM "outsourc[ed] telemarketing," addresses "third-parties acting on [UWM's] behalf," and brings up issues of "[w]hether any third-parties who placed the calls are agents of UWM." (Compl. ¶¶ 2, 25, 40, 42, 47(f), 56.) *Smith*, 561 F.3d at 1098; *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 732, n.2 (N.D. Ill. 2014) (considering at the 12(b)(6) stage an agreement central to TCPA allegations).

4

representatives, or employees of UWM or of having any endorsement from or affiliation with UWM. (UWM Broker Agr. ¶ 7.04.) The Agreement also prohibits use of UWM's name in marketing without prior written consent (*id.*, ¶ 7.11) and requires full compliance with all applicable laws and regulations (*id.*, ¶ 3.03).

***Plaintiff's Claims.*** The Complaint asserts two causes of action under the TCPA regulations: (1) claim under the TCPA Do-Not-Call ("DNC") regulations, *see* 47 C.F.R. § 64.1200(c), alleging that UWM solicited individuals who registered their numbers in the DNC Registry; and (2) claim under the TCPA internal DNC regulations, *see* 47 C.F.R. § 64.1200(d), alleging that UWM failed to honor plaintiffs' opt-out requests and failed to maintain appropriate policies and procedures. Plaintiff proposes two overbroad nationwide classes, defined by reference to calls that "Defendant or anyone acting on Defendant's behalf" initiated." (Compl. ¶ 42.)

## III.    STANDARD OF REVIEW.

***Lack of Personal Jurisdiction.*** Under Rule 12(b)(2), the Court may dismiss a case for lack of personal jurisdiction. The plaintiff "has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts." *Pytlik v. Pro. Res.*, 887 F.2d 1371, 1376 (10th Cir. 1989). In assessing a 12(b)(2) motion, courts may look beyond the pleadings and consider materials such as affidavits and other written materials. *Dental Dynamics, LLC*, 946 at 1228. "At this stage, the court must take the well-pleaded allegations in the Complaint as true, so long as they are not contradicted by the defendant's affidavits." *Pilgrim's Pride Corp.*

5

*v. Allegiant Elec., Inc.*, 717 F. Supp. 3d 1036, 1043 (D. Colo. 2024).

***Failure to State a Claim.*** To avoid dismissal under Rule 12(b)(6), a complaint must allege facts creating a "plausible inference" of legally cognizable harm. *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009). Plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Courts "need not accept as true a complaint's conclusory allegations, unwarranted inferences, or legal conclusions." *Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 148 F.4th 1202, 1210 (10th Cir. 2025). Allegations "merely consistent with" liability "stop short of the line between possibility and plausibility." *VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1159 (10th Cir. 2021).

***Motion to Strike.*** Under Rule 12(f), the Court "may grant a motion to strike class allegations where the pleading makes clear that the purported class cannot be certified and no amount of discovery would change that determination." *Faulhaber v. Petzl Am., Inc.*, 656 F. Supp. 3d 1257, 1271 (D. Colo. 2023). "One reason that a court may strike class allegations is that the proposed class, as defined by the plaintiff, is "fail-safe", i.e. it defines its membership in terms of the defendant's liability." *Costa v. Dvinci Energy, Inc.*, 342 F.R.D. 38, 39-40 (D. Mass. 2022) (collecting cases).

## IV.    <u>THE COURT LACKS PERSONAL JURISDICTION OVER UWM.</u>

### A.    The Court Lacks General Personal Jurisdiction over UWM.

A company is subject to general jurisdiction only when its affiliations with a state are "so continuous and systematic as to render [it] essentially at home in the

6

forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014). The paradigmatic "at home" forums are the states of organization and principal place of business. *Daimler*, 571 U.S. at 137; *Columbia Cas. Co. v. Valor Health Network, LLC,* 2024 WL 3597180, at *5 (D. Colo. July 31, 2024). Except in the rare "exceptional" case, these are the only states where a business may be subject to general jurisdiction. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017).

General jurisdiction is lacking here because UWM is neither organized under Colorado law nor has its principal place of business there. (10-K, pp. 5, 8, 24.) Nor is this one of the "exceptional" cases where general jurisdiction extends beyond those forums. UWM has no offices, bank accounts, employees, investments, or property in Colorado. (Decl. ¶ 18.) Contracting with independent brokers who sell to Colorado consumers does not render UWM "at home" in the state. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 906 n.12 (10th Cir. 2017); *see also Magill v. Ford Motor Co.,* 379 P.3d 1033, 1036, 1038 (Colo. 2016) (no general jurisdiction even where defendant maintained offices and certified mechanics). Likewise, business registration in Colorado does not establish general jurisdiction. *Lumen Techs. Serv. Grp., LLC v. CEC Grp., LLC*, 691 F. Supp. 3d 1282, 1296-97 (D. Colo. 2023).

### B.    The Court Lacks Specific Personal Jurisdiction over UWM.

Specific jurisdiction calls for a two-step inquiry: (a) whether the defendant has minimum contacts with the forum state; and, if so, (b) whether exercising personal

jurisdiction would offend traditional notions of fair play and substantial justice. *Old Republic*, 877 F.3d 904, 909. This case flunks both of these tests.

### 1. UWM Lacks Sufficient Minimum Contacts with Colorado.

The minimum contacts test has two requirements: (i) "the defendant must have purposefully directed its activities at residents of the forum state," and (ii) "the plaintiff's injuries must arise out of [the] defendant's forum-related activities." *Old Republic*, 877 F.3d at 909. When a defendant has not itself acted in the forum, specific jurisdiction may arise only through acts of "its authorized representatives, *i.e.,* its employees, directors, officers, and agents" under the federal common law of agency. *See Shell v. Am. Fam. Rts. Ass'n,* 899 F. Supp. 2d 1035, 1053 (D. Colo. 2012) (no personal jurisdiction where defendant had no contacts with Colorado and alleged agents' acts were not directed at Colorado); *see also Callier v. Wide Merch. Inv., Inc.*, 671 F. Supp. 3d 736, 743 (W.D. Tex. 2023) (dismissing TCPA claim because, absent an agency relationship, third-party contacts cannot establish jurisdiction); *Moore v. Charter Commc'ns, Inc.*, 523 F. Supp. 3d 1046, 1052-54 (N.D. Ill. 2020) (same).

***UWM Did Not Physically Place Calls at Issue.*** UWM is not subject to specific personal jurisdiction based on its own contacts with Colorado because it never placed calls to Plaintiff. (Decl. ¶ 11.) Indeed, as a wholesale lender, UWM does not engage in direct marketing to consumers. (Ex. 1, 10-K, p. 5). UWM's own conduct did not subject it to personal jurisdiction in Colorado.

***Acts of Independent Broker Clients Cannot Be Imputed to UWM.*** Because UWM placed no calls to Colorado consumers, specific personal jurisdiction can exist only if the parties who placed the calls were UWM's agents. *Shell,* 899 F. Supp. 2d at 1053. Plaintiff must show that UWM granted actual or apparent authority to make those calls or later ratified the callers' conduct. *Coreslab Structures (TULSA), Inc. v. Nat'l Lab. Rels. Bd.,* 100 F.4th 1123, 1136-38 (10th Cir. 2024). Plaintiff cannot make that showing here.

**No Actual Authority.** "An agent acts with actual authority if it reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1251 (10th Cir. 2013). Alleging "some degree of control" is not enough; agency requires the principal's control of the agent's "day-to-day operations with respect to the instrumentality, conduct, or specific aspect of the [agent's] business that caused the plaintiff's injury." *Doe v. G6 Hosp. Prop. LLC*, 2025 WL 3537626, at *7 (W.D. Wash. Dec. 10, 2025) (franchisor's limited oversight insufficient to establish agency).

The Complaint does not, and cannot, allege facts showing that UWM authorized the "representatives" who called Plaintiff to place calls on UWM's behalf. UWM did not authorize any broker to contact Plaintiff or her alleged number. (Decl. ¶ 17.) UWM has no borrowers named "Andrew Maler," "Ms. Maler," or any similar name. (*Id.*, ¶ 4.) UWM played no role in any broker obtaining Plaintiff's number and did not direct the alleged outreach to Plaintiff or her Phone Number. (*Id.*, ¶ 5.)

9

To the contrary, UWM took reasonable steps to prevent any unlawful calls. Its Broker Agreement—signed by every independent mortgage broker client—expressly defines brokers as independent contractors, **not UWM agents**, and forbids use of UWM's name in marketing without prior written approval, which UWM never gave. (*Id.* at ¶ 15; UWM Broker Agr. ¶¶ 7.04, 7.11.) The Agreement also prohibits brokers from violating applicable law in procuring loans. (UWM Broker Agr. ¶ 3.03.) Under these circumstances, courts have uniformly refused to find the agency relationship.[9]

**No Apparent Authority.** To establish apparent authority, "a complaint must allege that the principal's 'manifestations' created a reasonable belief in a third party that the agent had authority to act on behalf of the principal." *DeClements*, 2020 WL 9259326, at *4 (quoting Restatement (Third) Of Agency § 2.03). "Importantly, the apparent power of an agent must be determined by the ***acts of the principal, and not by the acts of the agent***." *Gresham v. Town of Depew, Oklahoma*, 2025 WL 752337, at *4 (10th Cir. Mar. 10, 2025) (emphasis added). Here, Plaintiff cannot show

---

[9] *See DeClements v. RE/MAX LLC*, 2020 WL 9259326, at *3 (D. Colo. Oct. 13, 2020) (no actual authority where plaintiffs failed to allege defendant "controls the activities of its franchisees, generally, or the calls its franchisees make, specifically"); *Moore*, 523 F. Supp. 3d at 1052-52 (no actual authority where the complaint did not allege the defendant expressly authorized the call); *Callier*, 671 F. Supp. 3d at 744 (no actual authority existed because the independent agent worked for multiple companies, could not use defendants' name without consent, and was not controlled in its marketing or communications); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1086 (C.D. Cal. 2012) (no vicarious liability for text-message campaign run by franchisee association where defendant, though aware of and funding the campaign, did not create, direct, or control its content); *In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d 514, 522-23 (N.D.W. Va. 2016) (rejecting TCPA vicarious liability in part because contracts required compliance with all laws).

apparent authority because any belief that "representatives" acted for UWM is ***not traceable to any manifestation by UWM***. (Compl. ¶¶ 29, 31, 34-35, 38-39, 57.) The Complaint does not allege that UWM held these callers out as its agents or permitted use of its name in direct-to-consumer marketing—because it did not. (Decl. ¶¶ 10, 16; UWM Broker Agr. ¶¶ 7.04, 7.11.) Plaintiff's theory rests solely on acts of unknown third-party callers—conduct expressly prohibited by UWM's Broker Agreement and, as multiple courts recognized, insufficient to create apparent authority.[10] Even if the callers identified themselves as calling "from" or "on behalf of" UWM (Compl. ¶¶ 29, 31, 32), that does not establish vicarious liability. *Abolaji v. Parker 1833 LLC*, 2025 WL 2379644, at *5 (D. Colo. Jan. 8, 2025) ("use of a franchisor's name by a franchisee alone is not sufficient to state a claim for vicarious liability").

**No Ratification by UWM.** Ratification occurs when "the principal intended to ratify the actions ***and*** did so ***with full knowledge*** at the time of the ratification of all material facts and circumstances relating to the unauthorized act or transaction." *McCafferty v. Preiss Enters., Inc.*, 534 F. App'x 726, 733-34 (10th Cir. 2013) (emphasis added). "Ratification is not about approving of the conduct—it is about the alleged principal electing to give the acts in question legal effect as if done by an agent acting with actual authority." *DeClements*, 2020 WL 9259326, at *4.

---

[10] *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 357 (7th Cir. 2020) (apparent authority requires principal manifestations; agent statements alone are insufficient in TCPA cases); *DeClements,* 2020 WL 9259326, at *4 (same); *Callier*, 671 F. Supp. 3d at 744 (same); *Moore*, 523 F. Supp. 3d 1046, 1053-54 (same).

11

Plaintiff does not, and cannot, allege that UWM knew of all key facts and intentionally ratified the unauthorized acts. UWM was not aware of the calls to Plaintiff as they were being made. (Decl. ¶ 7.) Even after receiving Plaintiff's letter, UWM could not identify the callers; the letter did not provide sufficient detail about the callers and listed only spoofed numbers. (*Id.*)

Equally important, UWM did not sell a mortgage product or otherwise benefit from the brokers' calls to Plaintiff. (*Id.* ¶¶ 4, 7.) Because Plaintiff never obtained a UWM loan, UWM had no opportunity to knowingly ratify the brokers' conduct. *See DeClements*, 2020 WL 9259326, at *4 (no ratification where "Plaintiffs don't allege that [defendant] ever affirmed the calls allegedly made to Plaintiffs"); *Roehrman v. McAfee, LLC*, 758 F. Supp. 3d 889, 899-900 (S.D. Ind. 2024) (no ratification where plaintiff "purchased no product in response to the offending text messages").

Plaintiff may argue UWM indirectly benefited if the calls boosted its business in Colorado, but general business benefits do not show ratification absent intent to affirm a ***specific unauthorized*** act with full knowledge of the facts.[11]

        2.      <u>Exercising Personal Jurisdiction Would Offend Notions of Fair Play and Substantial Justice.</u>

---

[11] *Moore*, 523 F. Supp. 3d at 1054 (no ratification found where plaintiff did not allege that defendant "knowingly accepted any benefit" from third-party's calls); *Toney,* 75 F. Supp. 3d at 745-46 (rejecting ratification argument where plaintiff did not allege any benefit derived by defendant from calls to her); *Gonzales v. Cordoba Legal Grp., LLC*, 2026 WL 772359 (W.D. Tex. Feb. 5, 2026), at *4, *R&R adopted,* 2026 WL 790575 (W.D. Tex. Feb. 21, 2026) ("Speculation or inference based on the existence of a marketing relationship or the receipt of business opportunities is insufficient to establish ratification.").

Even if Plaintiff met her burden of establishing minimum contacts, which she has not, the Court "must still inquire whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice." *Old Republic*, 877 F.3d at 909. In doing so, the Court may consider the following factors:

> (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Pro Axess, Inc. v. Orlux Distribution, Inc.,* 428 F.3d 1270, 1279-80 (10th Cir. 2005). A weak showing of minimum contacts requires a stronger showing of reasonableness. *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 956 F. Supp. 427 (S.D.N.Y. 1996).

Exercising personal jurisdiction over UWM in Colorado would be fundamentally unfair. ***First***, the burden on UWM would be extraordinary, given that virtually all relevant evidence and witnesses are located in Michigan. UWM is a Michigan company with its key personnel based there. (Decl. ¶¶ 18-19.) The November Letter suggests that Mr. and Mrs. Maler—the intended recipients of the calls—reside in Michigan, not Colorado. Nor is there any basis to suggest that the "representatives" who made the calls were themselves based in Colorado. Indeed, the November Letter indicates that these representatives called from Michigan numbers.

***Second***, given that UWM placed no calls at issue, Plaintiff's entire case rests on holding UWM vicariously liable for calls made by independent business entities over which UWM exercises no day-to-day control regarding their telephonic

13

solicitations. *Cf. Doe*, 2025 WL 3537626, at \*7 (franchisor's limited oversight insufficient to establish agency). The corpus of evidence relevant to issues of vicarious liability of UWM over its brokers nationwide resides in Michigan (Ex. 1, 10-K, p. 12), and the UWM Broker Agreement requires that the relationship between UWM and independent brokers be construed under Michigan law. (UWM Broker Agr., ¶ 7.15).

*Finally*, the interstate judicial system would benefit from rejecting personal jurisdiction in Colorado. In fact, two remarkably similar putative class actions have been recently filed in the Eastern District of Michigan, where UWM is based (one of which was filed by Plaintiff's counsel). *See McGonigle v. UWM*, No. 25-13865 (E.D. Mich.); *Mogck v. UWM*, No. 26-10733 (E.D. Mich.). Both cases are still in early litigation and may be consolidated or coordinated before the same judge due to overlapping proposed classes. There is no reason to hale UWM into Colorado to litigate a duplicative action. *Cf. Cadenasso v. Metro. Life Ins. Co.*, 2014 WL 1510853, at \*5 (N.D. Cal. Apr. 15, 2014) (transferring TCPA case partly due to overlapping class action elsewhere). In sum, exercising personal jurisdiction over UWM in Colorado contravenes traditional notions of fair play and substantial justice.

## V.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM.

To state a claim under 47 C.F.R. §§ 64.1200(c)(2) and (d), Plaintiff must allege that UWM "initiated" the calls—that is, took "the steps necessary to physically place a telephone call." *Connor v. Servicequick Inc.*, 2025 WL 2855393, at \*3 (D. Colo. Oct. 8, 2025). Section 227(c)(5) allows relief for violations of various DNC rules if a person

14

received an offending call "by **or *on behalf of*** the same entity . . . ." 47 U.S.C. § 227(c)(5) (emphasis added). Thus, a defendant may only be vicariously liable for calls placed on its behalf. *Escano v. Concord Auto Protect, Inc.*, 2023 WL 4247703, at *3 (10th Cir. June 29, 2023). Vicarious liability under the TCPA rests on common law agency principles of actual authority, apparent authority, or ratification. *Id.*; *DeClements*, 2020 WL 9259326, at * 3.

### A.    The Complaint Fails to State Direct Liability Claim Against UWM.

To plead direct TCPA liability, Plaintiff must "support [her] conclusion" that the UWM placed the calls. *Smith v. Direct Bldg. Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021). The Complaint fails to do so. Although it claims that the callers claimed to be calling "from [UWM]" or "on behalf of [UWM]" (Compl. ¶¶ 28–34, 56), Plaintiff's own November Letter lists a spreadsheet of "Phone Calls from MI" showing numbers originating in Michigan—none of which is alleged to belong to UWM. The Complaint also concedes that the calls may have been placed by a "UWM broker" or "others acting on [UWM's] behalf." (Compl. ¶¶ 20–25, 40, 56–57.)

Moreover, given that UWM does not offer its mortgage loan products directly to consumers and that "Independent Mortgage Brokers, have the initial communication with a potential borrower" (Ex. 1, 10-K, p. 7), it is implausible that UWM placed the offending calls. As many courts have found,[12] conclusory statements

---

[12] *Bank v. Spark Energy, LLC*, 860 F. App'x 205, 206 (2d Cir. 2021) (dismissing TCPA claim where plaintiff alleged defendant initiated calls but offered no supporting

that defendant placed the calls, without any supporting facts, cannot give rise to direct liability.

### B. The Complaint Fails to Allege Existence of Agency Relationship So As to Support Vicarious Liability.

As explained in Part IV(b)(1), *supra*, the Complaint is also devoid of any non-conclusory allegations to satisfy three theories of agency, so as to support vicarious liability. The closest Plaintiff comes to alleging vicarious liability is when she claims that the calls made by the unnamed representatives were "***from or on behalf of***" UWM. (Compl. ¶¶ 29, 31, 34-35, 38-39, 57; emphasis added.) Courts universally find such conclusory allegations to fall short of plausibly alleging vicarious liability.[13]

***No Allegations to Establish Actual Authority.*** The Complaint alleges no facts suggesting that UWM authorized the third-party "representatives" to make the challenged calls. *See DeClements*, 2020 WL 9259326, at *3. It also fails to identify any

---

details); *Donaca v. Dish Network, LLC.*, 303 F.R.D. 390, 396 (D. Colo. 2014) (dismissing direct liability claims where plaintiffs presented no evidence that defendant placed the calls).

[13] *See DeClements*, 2020 WL 9259326, at *3 (dismissing complaint that conclusory pleaded that Defendant "direct[ed], authorize[d], or at minimum, ratifie[d] the calls issue); *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 138 (E.D.N.Y. 2015) (dismissing vicarious-liability claim where plaintiff merely alleged defendant "is responsible for making or causing the making of" calls placed "on behalf of, and at the direction of" defendant); *Selou v. Integrity Sol. Servs. Inc.*, No. 15-10927, 2016 WL 612756, at *5 (E.D. Mich. Feb. 16, 2016) (vicarious-liability claim failed absent facts permitting a reasonable inference that defendant was liable for alleged misconduct); *Usanovic v. Americana, L.L.C.*, 775 F. Supp. 3d 1133, 1141-42 (D. Nev. 2025) (dismissing vicarious-liability claim where plaintiff asserted defendant was "directing, apparently authorizing, ratifying, and/or negligently supervising their agents," without providing factual support).

16

potential "vendor and what instructions may have been given to it." *Bryant v. Byron Udell & Assocs. Inc.*, 2023 WL 5180351, at \*6 (E.D. Va. Aug. 11, 2023) ("vicarious liability cannot attach without identifying this vendor and what instructions may have been given to it"); *DeClements*, 2020 WL 9259326, at \*3 (no actual authority where plaintiffs failed to allege defendant "controls the activities of its franchisees, generally, or the calls its franchisees make, specifically"). Absent details about UWM's relationship with the callers, even a claim (not made in the Complaint) that callers were UWM's agents would be too conclusory to plead actual authority.[14]

That is especially true here, given that UWM works with over 13,000 independent mortgage brokerages, and 57,000 individual mortgage loan officers. (Ex. 1, 10-K, p. 6.) These brokers are independent contractors under the UWM Broker Agreement, which expressly disclaims any agency, employment, or other affiliation with UWM and further prohibits the use of UWM's name in marketing without prior written authorization. (UWM Broker Agr. ¶¶ 7.04, 7.11.) The Agreement also requires brokers to comply with all applicable laws. (*Id.* at ¶ 3.03.) Imposing vicarious liability in this context is contrary to well-established agency and TCPA principles. *See DeClements,* 2020 WL 9259326, at \*3-4 (rejecting franchise relationship as a basis for imposing vicarious liability); *Thomas*, 879 F. Supp. 2d at 1086 (similar.).

---

[14] *See Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547, at \*6-7 (S.D.N.Y. Nov. 30, 2015) (allegation that a third party "is [the defendant's] agent" insufficient to state a TCPA vicarious liability claim); *Reo v. Caribbean Cruise Line, Inc.*, 2016 WL 1109042, at \*5 (N.D. Ohio Mar. 18, 2016) (no vicarious liability where plaintiff alleged only that defendant hired third-party marketers who placed the calls).

***No Allegations to Establish Apparent Authority.*** As stated in Part IV(B)(1), Plaintiff cannot establish apparent authority because her alleged belief that "representatives" acted on UWM's behalf is not traceable to any manifestation by UWM. (Compl. ¶¶ 29, 31, 34-35, 38-39, 57.) Even if the brokers claimed they called from or on behalf of UWM (Compl. ¶¶ 3, 29, 31, 34-35, 38, 39, 40, 57), the Complaint alleges no facts suggesting that ***UWM*** held these callers out as its agents and authorized the use of its name in consumer marketing. Any purported connection rests solely on acts by unknown callers—conduct that, by law, cannot create apparent authority. *DeClements,* 2020 WL 9259326, at *4; *Warciak*, 949 F.3d at 357.

***No Allegations to Establish Ratification.*** As noted in Part 4(B)(1), Plaintiff cannot allege that UWM gained any benefit from the calls. The Complaint does not allege that UWM sold a mortgage product or otherwise benefited from the calls. Even an indirect business benefit would not establish ratification. *See* n. 11 *supra*. Nor did Plaintiff's November Letter identify the callers—it listed 38 spoofed numbers, preventing UWM from tracing or stopping them. Thus, the Complaint offers no facts to suggest that UWM "intended to ratify the actions ***and*** did so ***with full knowledge*** . . . of all material facts and circumstances." *McCafferty*, 534 F. App'x at 733-34.

## VI.    THE COURT SHOULD STRIKE CLASS ALLEGATIONS.

Because neither of the proposed classes can be certified, class allegations should be stricken at the pleadings stage. *See Faulhaber*, 656 F. Supp. 3d at 1271.

***Proposed Classes Are Impermissibly Failsafe.*** The proposed classes are

textbook examples of impermissibly fail-safe classes. A "fail-safe" class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). A fail-safe class "includes **only** those who are **entitled** to relief." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (emphasis in original). "Such a class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those class members win or, by virtue of losing, they are not in the class and are not bound." *Id.*

Here, both classes include persons to whom "Defendant or **anyone acting on Defendant's behalf** initiated" the offending calls. (Compl. ¶ 42, emphasis added.) Membership therefore turns on whether the Court finds that the calls were either "initiated" by UWM (direct liability) or made "on behalf of" UWM (vicarious liability). That is precisely the hallmark of a fail-safe class.[15]

**Proposed Classes Fail Predominance, Superiority, and Ascertainability Requirements**. The proposed classes also fail predominance, superiority, and ascertainability requirements. Under Rule 23(b)(3), "questions of law or fact common to class members [must] predominate over any questions affecting

---

[15] *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 132 (N.D. Tex. 2020) (denying certification of similar TCPA classes because"[f]ailure to show that each class member was called by the defendant's agent kills certification."); *Chinitz v. NRT W., Inc.*, 2019 WL 4142044, at *5 (N.D. Cal. Aug. 30, 2019) (denying certification of TCPA class where differing levels of control over alleged agents created individualized determinations of liability).

only individual members" and class treatment must be "superior to other available methods." *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013). A class fails the predominance test when the "legal or factual questions that qualify each class member's case as a genuine controversy" are not "subject to generalized proof" applicable to the class as a whole. *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017). In addition, the ascertainability requirement demands that the class "(1) be defined clearly and cannot be defined too vaguely, and (2) be defined objectively and cannot be based on subjective criteria, such as by a person's state of mind." *Cline v. Sunoco, Inc. (R&M)*, 159 F.4th 1171, 1196 (10th Cir. 2025). Here, determining class membership here would require mini-trials into each call and whether a caller among UWM's 13,000 brokers and 57,000 loan officers fits any agency theory. Such individualized inquiries defeat predominance, superiority, and ascertainability. *Donaca*, 303 F.R.D. at 397 (class action is inappropriate where membership is impossible to identify without individualized mini-trials).

## VII.    CONCLUSION

The Court should dismiss the Complaint without prejudice for want of personal jurisdiction and with prejudice if the Complaint fails to state a claim. At a minimum, the Court should strike the legally defective class allegations.[16]

---

[16] If the Court does not dismiss Plaintiff's claims outright (and it should), it should transfer the case to the U.S. District Court for the Eastern District of Michigan, for the reasons stated in UWM's Motion to Transfer Venue filed contemporaneously.

Dated: March 31, 2026                    Respectfully submitted,

                                         FOLEY & LARDNER LLP

                                         By:  */s/Kelsey C. Boehm*
                                         Kelsey C. Boehm
                                         1144 15th Street, Suite 2200
                                         Denver, CO 80202
                                         Telephone: (720) 437-2000
                                         Email: kboehm@foley.com

                                         Irina    Kashcheyeva    (admission    request
                                         forthcoming)
                                         Amir    El-Aswad    (admission    request
                                         forthcoming)
                                         FOLEY & LARDNER LLP
                                         500 Woodward Avenue, Suite 2700
                                         Detroit, Michigan 48226
                                         Telephone: (313) 234-7100
                                         Email: ikashcheyeva@foley.com
                                         Email: ael-aswad@foley.com

                                         *Counsel for Defendant UWM*

21

## CERTIFICATION OF CONFERRAL

The undersigned counsel certifies that, on March 2, 2026, counsel for Defendant sent correspondence to counsel for Plaintiff identifying and explaining the substantive and jurisdictional deficiencies in Plaintiff's Complaint. On March 9, 2026, and again on March 19, 2026, counsel for Defendant further sought Plaintiff's concurrence in the relief requested during live telephone conferences. Such concurrence was not obtained, as counsel for Plaintiff maintained that jurisdiction is proper in the District of Colorado and that the Complaint contains no pleading deficiencies.

Dated: March 31, 2026                    FOLEY & LARDNER LLP

By:  */s/ Kelsey C. Boehm*
Kelsey C. Boehm
1144 15th Street, Suite 2200
Denver, CO 80202
Telephone: (720) 437-2000
Email: kboehm@foley.com

Irina Kashcheyeva(admission request forthcoming)
Amir El-Aswad (admission request forthcoming)
FOLEY & LARDNER LLP
500 Woodward Avenue, Suite 2700
Detroit, Michigan 48226
Telephone: (313) 234-7100
Email: ikashcheyeva@foley.com
Email: ael-aswad@foley.com

*Counsel for Defendant*

22

**AI CERTIFICATION AS TO DEFENDANT UNITED WHOLESALE MORTGAGE, LLC'S MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS**

The undersigned counsel certifies that any language drafted by AI was personally reviewed by the filer or another human for accuracy and all legal citations are to actual, non-fictitious cases or cited authority.

Dated: March 31, 2026          FOLEY & LARDNER LLP

By: */s/Kelsey C. Boehm*
Kelsey C. Boehm
1144 15th Street, Suite 2200
Denver, CO 80202
Telephone: (720) 437-2000
Email: kboehm@foley.com

Irina Kashcheyeva (admission request forthcoming)
Amir El-Aswad (admission request forthcoming)
FOLEY & LARDNER LLP
500 Woodward Avenue, Suite 2700
Detroit, Michigan 48226
Telephone: (313) 234-7100
Email: ikashcheyeva@foley.com
Email: ael-aswad@foley.com

*Counsel for Defendant UWM*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of March, 2026, a true and correct copy of the foregoing was served via CM/ECF on all parties of record.


Dated: March 31, 2026                     FOLEY & LARDNER LLP

By:  */s/ Kelsey C. Boehm*
Kelsey C. Boehm
1144 15th Street, Suite 2200
Denver, CO 80202
Telephone: (720) 437-2000
Email: kboehm@foley.com

Irina Kashcheyeva (admission request forthcoming)
Amir El-Aswad (admission request forthcoming)
FOLEY & LARDNER LLP
500 Woodward Avenue, Suite 2700
Detroit, Michigan 48226
Telephone: (313) 234-7100
Email: ikashcheyeva@foley.com
Email: ael-aswad@foley.com

*Counsel for Defendant United Wholesale Mortgage, LLC*

24